[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant Grant W. Lambert appeals his conviction for one count of retaliation in violation of R.C. 2921.05(B).
Lambert puts forth four assignments of error. First he claims that the evidence presented at trial was insufficient to support his conviction. Next, he contends it was error for the trial court to admit evidence when its probative value was substantially outweighed by the danger of unfair prejudice. Lambert then claims the trial court erred in admitting irrelevant and highly prejudicial evidence. Finally, Lambert contends the law under which he was convicted is vague, overbroad, and therefore, unconstitutional.
On December 24, 1996, Lambert was convicted of domestic violence after a December 6 incident involving Joanne Seidman. At the time of the incident, Lambert and Seidman had been living together for approximately eight months. Throughout the proceedings that resulted in Lambert's conviction, Seidman was assisted by Sarah Gregg of Artemis Center for Alternatives to Domestic Violence ("Artemis"). In her capacity as a police advocate, Gregg provides education and support for complaining witnesses in domestic violence cases, including accompanying them to court proceedings.
Gregg appeared with Seidman at a hearing on December 20, 1996, in connection with the domestic violence charge against Lambert. At that time, she had an opportunity to hear Lambert speak for nearly twenty minutes.
On January 10, 1997, Gregg was staffing the Artemis domestic violence hotline. She received a call from a man she determined was Lambert although he gave his name as "Bill Roberts." Lambert expressed concern for his ex-girlfriend, "Joanne King," and stated his purpose for calling was to try to get some counseling for her. Once he mentioned he had been convicted of domestic violence, Gregg made it clear to him that Artemis did not provide services for batterers, and she encouraged him to contact his probation officer or defense attorney. Despite his attempt to disguise his identity, Gregg recognized the caller's voice as that of Lambert.
Three days later, Kathleen Caldwell, a domestic violence court advocate at Artemis, received a call[1] on the domestic violence hotline. The caller said he wanted help and told her he had been wrongly convicted of domestic violence. Upon hearing of his conviction, she attempted to terminate the call, telling him that Artemis could not provide him with any services other than a referral. The caller replied by saying, "Please don't hang up, this situation could get really serious." Again, she attempted to terminate the call. "If you hang up, somebody's going to die. You're going to read it in the paper. You should take me more serious," he continued. "I was wrongly convicted. Someone lied about me and said things that weren't true. That's why I was convicted of domestic violence and I'm going to kill her, and unless you sit and talk to me more, you're going to read about it next time and you're going to realize that it was because you didn't know what you were supposed to do."
Caldwell decided to get more information from the caller in hopes of discovering his identity. At the same time, she signaled to others in the office that she needed help and Donna Gardner came to her assistance. Caldwell took notes as the caller went on to describe all the different methods he had considered to kill his victim, the times available to him, the weapons he had at his disposal, etc. In the course of his diatribe (the entire conversation took place over a forty-five minute period) Caldwell was able to discern that the caller's first name was Grant and that he was incarcerated. In addition, Lambert told her the location of the court in which he had been convicted and the names of the judge, prosecuting attorney, public defender, and the caller's probation officer.
Meanwhile, Gardner called facilities in which the caller might be incarcerated. Her second call was to the Montgomery County Jail. Gardner conveyed the nature of the situation to an officer and shortly thereafter Lambert was discovered, still talking on the telephone. Through the telephone, Caldwell could hear an officer tell Lambert he needed to hang up the phone. Lambert complied, ending the call.
On April 1, 1997, Lambert was indicted on one count of retaliation in violation of R.C. 2921.05(B). The jury returned a verdict of guilty against him and the court sentenced Lambert to four years of imprisonment. Lambert now timely appeals his conviction.
 I. Appellant's conviction was not supported by sufficient probative evidence and should be reversed.
Lambert claims in his first assignment of error that there was insufficient evidence presented by the prosecution to support his conviction for retaliation. The test for reviewing the sufficiency of the evidence to support a criminal conviction was succinctly put by the Ohio Supreme Court in paragraph two of the syllabus in State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Thus, the question here is whether the prosecution's evidence was such that, if believed, the jury could have found it to be beyond reasonable doubt that Lambert (1) purposely, (2) by unlawful threat of harm to any person, (3) retaliated against the victim of a crime, (4) because the victim filed or prosecuted criminal charges. R.C. 2921.05(B). Lambert does not contest the jury's findings that he acted purposely against the victim of a crime because the victim filed or prosecuted criminal charges. The only element Lambert argues was unsupported by sufficient evidence is that he unlawfully threatened harm to any person.
First, Lambert contends he made no threats at all; an assertion which is patently at odds with the evidence presented at trial, and with Lambert's own statements during the investigation of the incident as recounted by Detective Engel of the Dayton Police Department. Kathleen Caldwell testified that during the course of her conversation with Lambert she came to the conclusion that he was homicidal. Tr. at 87. Lambert revealed to her that he had several different plans he could implement to kill Seidman, including shooting her, strangling her, blowing her up with explosives, and calling a friend or relative to kill her for him. Detective Engels testified that during his investigation of the incident, Lambert admitted he had threatened Seidman during the phone calls to Artemis. Tr. at 180.
Lambert urges us to view these comments as mere "fantasies," nothing more than his attempt to "let off steam," or a misguided attempt to get someone to listen to him. In considering a sufficiency of the evidence argument, however, we are bound to view the evidence in a light most favorable to the prosecution, not the defendant. Jenks, supra. Consequently, Lambert's various characterizations of his statements are of little significance. True, the jury might reasonably have been able to believe Lambert's characterizations, but such is not the test for the sufficiency of evidence. We find that in viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Lambert did indeed threaten harm to Seidman. The jury's verdict is, therefore, supported by sufficient evidence and will not be disturbed.
Lambert also argues that even if his statements are construed as threats, they were of no consequence since they were not uttered directly to Seidman. He submits that "there can be no threat in a statement when there is failure to identify the person making the threat and failure to identify the person allegedly being threatened." Appellant's Brief at 5. Essentially, Lambert's claim is that the statute requires any threat of harm to be communicated directly to the person threatened by the person doing the threatening. It is noted that nothing in the retaliation statute expressly imposes such a requirement.
In construing a statute, a court must first determine whether the language of the statute itself creates ambiguity as to the legislature's intent in enacting the law. Shover v. Cordis
(1991), 61 Ohio St.3d 213, 218; R.C. 1.49. Absent ambiguity, a court need look no further, and the legislative intent governs the court's interpretation of the statute. See State ex rel. Fenleyv. Ohio Historical Society (1992), 64 Ohio St.3d 509, 511; R.C.1.49. If the statute is ambiguous, however, the court may look to other sources, such as the legislative history or laws dealing with the same or similar subjects, to determine the intention of the legislature. R.C. 1.49.
R.C. 2921.05(B) reads as follows:
 No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges.
 While it is clear from the language of the statute that the subject of the threat of harm may or may not be the victim of a crime, it is not clear whether or not the threat must be uttered directly to the person against whom the retaliation is sought. Because the statute is ambiguous on this point, we avail ourselves of other sources from which to discern the intent of the legislature and resolve the ambiguity.
The statute at issue, which was introduced as H.B. 88 on February 1, 1995, was described as expanding current law concerning intimidation to include retaliation. Ohio Legislative Service Commission, Summary of Discussion on H.B.88, House Judiciary and Criminal Justice Committee, October 4, 1995. In addition, the distinguishing characteristic between intimidation and retaliation was said to be that intimidation occurs before a judicial decision, whereas retaliation occurs after a judicial decision has been rendered. Id. The retaliation statute, therefore, was intended to correspond to the intimidation statute in its effect, save that it is applicable only after judgment has been rendered on the underlying offense. We note that, like the retaliation statute, the intimidation statute imposes no express requirement that the threat be communicated from the one threatening directly to the person threatened.
Further indication of the legislature's intent is evident in the similarity of language in the two statutes. The intimidation statute reads in relevant part as follows:
 (A) No person, knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a * * * witness involved in a civil action or proceeding in the discharge of the person's duties of * * * witness."
 Significantly, the "unlawful threat of harm" phrase, the meaning of which Lambert now challenges, appears in identical form in the intimidation statute.
It has long been the rule that statutes relating to the same subject matter should be construed in pari materia. Warner v.Ohio Edison Co. (1949), 152 Ohio St. 303, 307. Since R.C. 2921.05
(retaliation) and R.C. 2921.03 (intimidation) relate to the same general subject matter, we adhere to the rule and construe them thusly.
In State v. Dudas (May 29, 1997), Cuyahoga App. No. 71065 at *7, unreported, the court ruled that any rational trier of fact could find the essential elements of the crime of intimidation proved beyond a reasonable doubt where the defendant/appellant had communicated his threats to a fellow inmate rather than to the judge who was the subject of the threats. Furthermore, the statutes pertaining to menacing, although worded differently than the retaliation and intimidation statutes, cannot be said to be so dissimilar to those statutes in subject matter that their construction lacks value in this analysis. In menacing cases, courts have declined to reverse a conviction on the basis that the threats of harm were made to a third person rather than the intended target of the harm. State v. Roberts (Sept. 26, 1990), Hamilton App. No. C-890639, unreported; State v. Kuhn (Mar. 28, 1984) Hamilton App. Nos. C-830489-90, unreported. In both cases the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed. The same is true in the instant case.
An employee of Artemis accompanied Seidman to a hearing concerning the underlying domestic violence charge. Artemis also assisted Seidman in obtaining a civil protection order against Lambert. On January 10, three days before Lambert made the phone call that precipitated the present proceedings, he phoned Artemis and told them he wanted them to contact his ex-girlfriend and provide counseling for her. He was told Artemis did not provide services for batterers, but he nevertheless called again on January 13. By that time, Seidman had requested and received a block on her phone number rendering it impossible for Lambert to call her from the Montgomery County Jail. Any rational trier of fact could have found beyond a reasonable doubt that Lambert knew of Seidman's connection to Artemis, could not reach her by phone directly, and believed a call to Artemis was his most promising method of conveying his threats to Seidman. We find sufficient evidence to support the jury's verdict and Lambert's first assignment of error is overruled.
 II. The trial court erred in admitting prejudicial evidence of the facts concerning appellant's prior domestic violence conviction.
 In his second assignment of error, Lambert contends the trial court erred when it admitted other than documentary evidence pertaining to the underlying domestic violence conviction. Specifically, Lambert claims Seidman's testimony concerning the domestic violence incident was unduly prejudicial and should have been excluded at trial. We find no merit in Lambert's argument.
Lambert cites State v. Adams (1978), 53 Ohio St.2d 223, andState v. Sutherland (1994), 92 Ohio App.3d 840, in support of his contention. Adams, however dealt with the admissibility of evidence of a prior conviction which was "wholly independent" of the charge for which the defendant was on trial. Adams, supra at 230. In addition, the court found that the prosecutor had no reason for offering the evidence other than to impugn the defendant's character generally. Id.
In contrast, here the underlying domestic violence incident was an integral part of the offense with which Lambert was charged. In fact, the state was required to show beyond a reasonable doubt that Seidman had filed or prosecuted criminal charges against Lambert. R.C. 2921.05(B). Thus, Adams is inapposite.
The Sutherland court reversed a defendant's conviction because extrinsic evidence of a prior conviction had been improperly admitted into evidence in the lower court. The court characterized the evidence as "substantial" and looked with disfavor on the fact that a deputy was permitted to "elaborate on the intricate details" of the earlier conviction. Sutherland,supra at 847. Neither circumstance exists in the present case. Furthermore, as in Adams, the evidence in question was of no probative value as to the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id.; Evid.R. 404(B).
Lambert argues that the "details of appellant's conviction for domestic violence seem to have been introduced only to show that he had the propensity for threats or violence and acted in conformity therewith." Appellant's Brief at 8-9. Since Lambert claims his threats during the January 13 phone call to Artemis were not really threats and were, instead, misinterpreted by Caldwell, evidence of other threats similar in nature toward the same intended victim were relevant to show an absence of mistake or accident. Thus, the evidence objected to by Lambert is admissible under Evid.R. 404(B). For the foregoing reasons, Lambert's second assignment of error is not well-taken.
 III. The trial court erred in permitting evidence of alleged statements of appellant which were not relevant and were highly prejudicial.
 In his third assignment of error, Lambert contends the trial court erred in admitting certain evidence included in Caldwell's documentation of her conversation with Lambert on January 13th. In particular, he claims admission into evidence of the information listed under "Batterer Characteristics" and "HX [or History] of Domestic Violence" on State's Exhibit 1 was highly prejudicial and irrelevant.
A careful reading of the pertinent parts of the transcript reveals that Lambert did not object to admission of the Batterer's Characteristics section of the document in the lower court. His objection at that time concerned only the information under the History of Domestic Violence heading. Tr. at 260-62. Thus, for purposes of appeal, any objection to the information contained within the Batterer's Characteristics section of the form has been waived.
Nowhere in Lambert's third assignment of error does he enlighten this court as to his precise objection to the admission into evidence of the information contained under the History of Domestic Violence heading of State's Exhibit 1. At trial, he objected to the evidence on the basis that Caldwell had no knowledge of Lambert's violent history. Tr. at 261. Assuming his objection has remained constant, we decline to find error in the lower court's decision to admit the evidence. It was made clear in Caldwell's direct examination that she utilized the History section only to record the nature of the threats being made by Lambert during the January 13 phone call. In other words, the information, although listed in the History section, does not pretend to be a history, but is instead a checklist of the various threats made by Lambert during the call to Artemis. Thus, the lower court correctly declined to exclude the evidence based on Lambert's erroneous characterization of the nature of the information.
Lambert also objects to the admission of State's Exhibit 2 which is Caldwell's letter to the Trotwood Police Department regarding her January 13 conversation with Lambert. He acknowledges, however, that the lower court ruled in his favor regarding certain information contained in the document. Appellant's Brief at 11. His objection seems to be that the letter included references to Lambert's beating a child with a baseball bat and hitting a soldier with a shovel. The record shows these references were redacted from the letter before it was provided to the jury. We are at a loss to discover any other basis for Lambert's objection in his brief. Accordingly, Lambert's third assignment of error is overruled.
 IV. Revised code section 2921.05(B) is unconstitutionally vague and over broad and Appellant's conviction thereunder should be reversed.
 In his final assignment of error, Lambert contends the law under which he was convicted is unconstitutional due to vagueness and overbreadth. We note at the outset that Lambert does not specify whether it is the federal constitution or the state constitution he believes R.C. 2921.05(B) violates, but we infer from his argument that it is the former.
Although Lambert claims the statute is both vague and overbroad, he makes no argument regarding its overbreadth. We, therefore, decline to entertain his unsubstantiated claim of unconstitutionality on overbreadth grounds.
A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." Papachristou v. Jacksonville
(1972), 405 U.S. 156, 162. The vagueness doctrine is not, however, "a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky
(1972), 407 U.S. 104, 110.
Lambert challenges as vague the constitutionality of one phrase in the statute: "unlawful threat of harm." His sole argument pertaining to the phrase seems to be that a person of ordinary intelligence could not have fathomed that making death threats to a third person against an unnamed target would fall within the scope of the retaliation statute. We are unconvinced.
The Supreme Court of the United States has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Hoffman Estates v. Flipside, HoffmanEstates, (1982), 455 U.S. 489, 499. The retaliation statute contains a scienter clause requiring the retaliation against the victim of a crime to be acted out purposely, which is to say, it must be done "intentionally; designedly; consciously; knowingly. [An] act is done purposely if it is willed, is [the] product of conscious design, intent or plan that it be done, and is done with [an] awareness of probable consequences." Black's Law Dictionary (6 Ed.Rev. 1990) 1236. The jury in a retaliation case, therefore, must find that the accused intended to retaliate against the victim of a crime. Such a finding presupposes an expectation on the part of the accused that the victim would be or, by some manner, would become aware of the threats. Thus, the statute includes not only threats communicated directly to the victim by the accused, but also encompasses those situations where the accused makes the threats to a third person who is likely to convey their substance to the victim. The victim need not be expressly named where her identity is readily ascertainable by the recipient of the threats. To hold otherwise would eviscerate the retaliation statute and provide perpetrators with a handy method of avoiding prosecution by simply refusing to utter the intended target's name. We find no vagueness sufficient to render the retaliation statute unconstitutional here.
Having found no merit in any of Lambert's four assignments of error, we affirm the jury verdict below.
BROGAN, J., concurs.
[1] Prisoners are permitted phone calls of no more than fifteen minutes in length. To converse with Caldwell for the time he did, approximately forty-five minutes, Lambert placed three consecutive calls from jail. We will, however, refer to the three calls as one for the sake of convenience.