OPINION
Appellant, Tiffnie A. Keller, appeals her convictions, rendered in the Fayette County Court of Common Pleas, on five counts of theft and one count each of attempted aggravated theft and falsifying a government record. We affirm.
In June 1995, Vincent McKee, age eighty-three, hired appellant to care for his wife of fifty-five years who was suffering from Alzheimer's disease. Appellant's salary was $6.50 per hour. McKee originally had taken his wife to a rest home, but felt she would receive better care at home. According to McKee, when appellant began her employment she was "sweet" and "a pleasant person to be around." However, appellant's influence over the McKee home soon began to manifest. Appellant suggested to McKee that she move into the home and she brought her own furniture and belongings. Then, without permission from McKee, appellant bought a hospital bed for McKee's wife. Appellant moved into the master bedroom and moved the McKees into the spare bedroom. Appellant changed the rugs, window coverings, wall coverings and border in the master bedroom without McKee's approval. Also, some of the improvements were paid for with McKee's credit card.
At one point, appellant questioned the loyalty of McKee's children and suggested that she should be a beneficiary in McKee's will. McKee testified that "my son was in uh the lot next to the house uh working * * * and * * * she says uh [McKee's son] * * * he doesn't even get off come over to see his folks. Well she gave this here[,] leave me this house." In general, McKee felt "[appellant] was making so everything she wanted I would * * * I would do for her." McKee elaborated that "I was just a serv [sic] * * * instead of being the boss, I was a serf in that house."
In August 1995, McKee fired appellant because she did not arrive for work, but he could not find a suitable replacement. In the same month, he rehired appellant at $6.75 per hour because he felt he had no choice. At appellant's request, he began to pay her salary in cash. The record indicates McKee may have overpaid appellant on several occasions.
McKee gave appellant $2,000 for legal costs on December 7, 1995. McKee testified "[appellant] was making so everything [appellant] wanted * * * I would do for her." McKee paid for appellant's automobile loan of $13,189.66 on December 27, 1995. According to McKee, "It wasn't a gift * * * it was a way of trying to buy * * * goodwill uh anything that would help my wife." McKee elaborated on appellant's behavior: "she keeps working on * * * on this and this and it leads up to it." Significantly, McKee stated that "I was only buying to just to help get results."
McKee paid a loan debt of $8,559.62 from Merchant's National Bank for appellant's father on December 29, 1995. McKee testified that he did not know appellant's father and wrote the check because "she was right there * * * right there behind me, I didn't know what to do, and so I paid it * * *." On January 6, 1996, McKee paid $1,692 for a diamond from an engagement ring appellant wanted to keep. McKee testified that appellant's engagement was over, but appellant was "crazy about diamond rings." McKee stated that he was "suckered," but when "you love her [McKee's wife] so much you can't do anything to stop [appellant]."
Appellant and McKee went to Merchant's National Bank to renew McKee's $100,000 certificate of deposit and put the interest in a checking account. At the bank, McKee testified that appellant "shouted" that her name should be on the new certificate of deposit. McKee relented to appellant's demand because "[he] was afraid not to" and was concerned about his wife's care. An employee at the bank testified McKee's original intent was not to put appellant's name on the new certificate of deposit. Later, McKee removed appellant's name from the certificate of deposit.
Finally, while working for McKee, appellant failed to report income and other assets to the Fayette County Department of Human Services. As a result, appellant received government services that she did not qualify to receive.
Appellant was indicted on nine counts, including theft by threat and/or deception, attempted aggravated theft and falsifying a government record. After a jury trial on July 29, 1997, appellant was convicted of seven counts. Five counts related to money acquired directly from McKee (three counts of theft by threat, one count of theft by threat and/or deception and one count of attempted aggravated theft); two additional convictions (theft by deception and falsifying a government record) related to receipt of government benefits, including food stamps, aid for dependent children and Medicaid. From these convictions, appellant filed a timely notice of appeal and presents four assignments of error for our review:
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE IS INSUFFICIENT TO SUPPORT SAID CONVICTIONS.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED THE STATE'S KEY WITNESS TO TESTIFY FROM PRIOR STATEMENTS, I.E. PERSONAL NOTES, WITHOUT SATISFYING THE DICTATES OF EVIDENCE RULES 612 AND 803(5).
 PREJUDICIAL ERROR OCCURS WHEN EVIDENCE IS ADMITTED DURING TRIAL THAT THE DEFENDANT HAD A PENDING "STALKING" CHARGE WHICH INVOLVED A LAW ENFORCEMENT OFFICER THEREBY DENYING HER THE RIGHT OF A FAIR TRIAL.
 DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In the first assignment of error, appellant argues that her convictions were based on insufficient evidence and were against the manifest weight of the evidence. We confine our discussion to the five counts which relate to money appellant received from McKee.[1]
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio stated that the legal concept of sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. In making this determination, the reviewing court must view the evidence in the light most favorable to the prosecution, and determine whether any reasonable trier of fact could find the appellant committed the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,273.
Theft is defined as follows:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat
R.C. 2913.02. In all five counts, appellant was charged with theft by threat.[2]
The totality of the evidence indicates that appellant used her position of dominance in the home to coerce McKee to pay for items unrelated to her employment. McKee was in grave need of a caretaker for his wife. Appellant knew that McKee desperately needed someone to care for his wife and could be "suckered." The record indicates McKee paid for items such as appellant's car loan and a diamond to "get results" for his wife. The jury could reasonably have concluded that appellant took advantage of McKee by coercing him into paying for these items. See State v. Peterson (Nov. 8, 1995), Summit App. No. 17141, unreported (live-in caretaker coerced eighty-four year old man to write checks to caretaker unrelated to the caretaker's employment). Based on this coercive behavior, the jury could have reasonably concluded that McKee felt threatened by appellant's demands for money. Therefore, we find the evidence legally sufficient to support the convictions for theft by threat.
A separate inquiry is necessary to determine whether a conviction is against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the appellate court reviews the record as a "thirteenth juror." Thompkins at 387. A reversal is warranted when the appellate court disagrees with the resolution of the conflicting testimony at the trial level. Id. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. Hawkins (1993),66 Ohio St.3d 339, 344. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387.
Based on the facts previously detailed, we find the convictions were not against the manifest weight of the evidence. The convictions for theft by threat are supported by the trial record. Accordingly, the first assignment of error is overruled.
In the second assignment of error, appellant argues that the trial court committed reversible error by allowing McKee to testify from personal notes. Appellant claims the court misapplied Evid.R. 612, Writing Used To Refresh Memory, which allows a witness to refresh his recollection of past events while testifying.
At the beginning of McKee's testimony, appellant objected that McKee was "testifying from documents." The prosecutor indicated that the "documents" were being used to refresh McKee's present recollection. The objection was overruled. After the initial objection, it is entirely unclear when, if it all, McKee testified from "documents." Thus, based on the record, we cannot find that the trial court abused its discretion in applying Evid.R. 612. The second assignment of error is overruled.
In the third assignment of error, appellant claims that prejudicial error occurred when McKee testified that appellant had a pending "stalking" charge against her involving a sheriff named Deventhal. An initial objection was sustained, but the testimony continued as the prosecutor attempted to stop McKee from discussing the "stalking" charge. A limiting instruction was not given to the jury. We agree that evidence of prior bad acts which demonstrates only a propensity for criminal behavior is generally inadmissible. State v. Adams (1978), 53 Ohio St.2d 223, 230. The "stalking" evidence was irrelevant and should have been excluded. However, in light of the overall evidence of appellant's guilt, we find the admission of this testimony constitutes harmless error. See Crim.R. 52(A). The third assignment of error is overruled.
In the fourth assignment of error, appellant argues that her trial counsel was ineffective. Specifically, appellant asserts the following trial errors constituted ineffective assistance: (1) not cross-examining state witness Vincent McKee, but instead calling McKee on direct examination during the defense case; (2) misapplication of Evid.R. 613(B), prior inconsistent statements; (3) failure to request a limiting instruction or mistrial regarding the "stalking" evidence, and (4) failure to provide discovery to the state regarding a psychologist, who was subsequently not permitted to testify.
In order to establish a Sixth Amendment violation for ineffective assistance of counsel, appellant must demonstrate that (1) trial "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland v. Washington (1986), 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068. An appellate court may assume deficient performance "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." State v. Loza (1994), 71 Ohio St.3d 61,83.
Assuming defense counsel's decision to call Vincent McKee on direct in the defense case constituted ineffective assistance, we fail to see any prejudice that would reasonably affect the outcome of the trial. McKee's difficulty in remembering and organizing his thoughts was apparent. However, both the prosecutor and defense counsel struggled with McKee's testimony. As to the prior inconsistent statements of McKee, appellant has not demonstrated a reasonable probability that these statements would have affected the trial. Id. We have ruled the "stalking" evidence constituted harmless error and, therefore, this testimony did not prejudice appellant. Id.
Finally, the testimony of the psychologist, Julie Brahams, Ph.D., would apparently have addressed the psychological implications of aging. In our view, this expert testimony may have invaded the province of the jury. See Evid.R. 702(A).[3]
In any event, we find no reasonable probability Dr. Brahams testimony, even if admitted, would have changed the outcome of the trial. Id. Thus, the fourth assignment of error is overruled.
Judgment affirmed.
WALSH, J., concurs.
KOEHLER, J., dissents.
[1] Appellant does not seriously challenge whether the two convictions related to receipt of government benefits from the Fayette County Department of Human Services were supported by legally sufficient evidence or the weight of the evidence. However, after reviewing the record, we find those two convictions are supported by overwhelming proof.
[2] In the count related to the $2,000 McKee paid for appellant's legal costs, the indictment included theft by deception. Also, the count for attempted aggravated theft requires the conduct be such that, if successfully completed, would result in aggravated theft. See R.C. 2923.02. With respect to all of the theft counts, the applicable element is "threat." See R.C.2913.02(A)(4).
[3] "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons[.] * * *" Evid.R. 702(A).