DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of aggravated robbery and one count of tampering with evidence. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} The trial court abused its discretion when it refused to permit a jury view.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} The inconsistent verdicts violated appellant's rights to due process and to be free from cruel and unusual punishment as protected by the constitutions of the United States and of the state of Ohio.
 {¶ 7} "Assignment of Error No. 3
 {¶ 8} The guilty verdicts were against the manifest weight of the evidence.
 {¶ 9} "Assignment of Error No. 4
 {¶ 10} The trial court committed error when it imposed the maximum sentence for aggravated burglary.
 {¶ 11} "Assignment of Error No. 5
 {¶ 12} The imposition of consecutive sentences without a special jury finding violated appellant's rights to due process and trial by jury as recognized in Apprendi v. New Jersey (2000), 530 U.S. 466.
 {¶ 13} "Assignment of Error No. 6
 {¶ 14} A trial court commits reversible error when it permits jurors to ask questions of witnesses.
 {¶ 15} "Supplemental Assignment of Error:
 {¶ 16} Appellant was denied the effective assistance of counsel to which he was entitled when his trial counsel did not call Toledo Police Detective Sherri Wise as a witness."
 {¶ 17} The facts that are relevant to the issues raised on appeal are as follows. On November 16, 1999, appellant was charged by indictment with one count of aggravated burglary in violation of R.C.2911.11(A)(1); one count of rape in violation of R.C. 2907.02(A)(1)(b); one count of gross sexual imposition in violation of R.C. 2907.05(A)(4); and one count of tampering with evidence in violation of R.C.2921.12(A)(1). These charges arose from the burglary of Marie Thomas' home on November 6, 1999, when she was absent and her four children were alone, and the assault on Thomas' twelve-year-old daughter Kristina that occurred during the break-in. The case went to trial in November 2000, and the jury found appellant not guilty of the charge of rape but was unable to reach unanimous verdicts on the other three charges. Appellant was ordered discharged on the rape count and the matter was set for pre-trial on the remaining charges.
 {¶ 18} On December 20, 2000, the trial court granted the state's motion to amend the charge of rape in the original indictment to a charge of gross sexual imposition. Prior to trial, appellant also filed a motion to preclude the victim from testifying that she was raped and a motion in limine to preclude an anticipated state's witness from testifying about statements made to her by someone other than the complaining witness. This motion also was granted. Appellant also filed a motion in limine to prohibit any witness from testifying about the collection or testing of appellant's fingernails, which the trial court denied. Appellant filed a request for a bill of particulars, which the trial court granted in part, and a motion for jury view.
 {¶ 19} On January 29, 2001, the case came on for trial. At that time, the trial court denied the motion for jury view, finding that it would not assist the jury in understanding the case and would delay the trial. The following relevant testimony was heard.
 {¶ 20} Detective Chad Culpert, Toledo Police Division, testified that he processed the crime scene for evidence on November 6, 1999. Culpert further testified that after another detective brought appellant into custody, he met appellant in an interview room and told him the police were attempting to obtain a search warrant that would allow them to cut appellant's fingernails for possible use as evidence in the investigation. Culpert testified that he then left appellant, who was handcuffed behind his back, sitting alone and went to an adjacent room where he was able to observe appellant on a video monitor. Culpert stated that after he left appellant, he asked another detective to activate the taping portion of the monitor. As Culpert and other detectives observed, they saw appellant stand up and look out the window in the door as if to see whether anyone was looking in. The detective further testified that it appeared to him that appellant was attempting to break off his fingernails. He stated that as he continued to observe, it looked as if appellant was trying to hold in his hand whatever he had been trying to break off. He then saw appellant look out the window again, turn toward the table in the room and toss what Culpert assumed were pieces of fingernail onto the table. The detective testified that appellant then bent down, sucked the pieces off the table and swallowed them. At that point, Detective Culpert ran into the interview room to stop appellant from swallowing any more potential evidence. The detective then obtained a pair of clippers and cut samples of each of appellant's fingernails.
 {¶ 21} Kristina Thomas testified as to the events of the night of November 6, 1999. Kristina stated that she is acquainted with appellant because he is her aunt's ex-boyfriend. She testified that she liked appellant because he used to take her and her brothers and sister places. Kristina stated that on the night of November 6, 1999, she was home alone with her sister, Rhonda, and two brothers, Norman and Phillip. She testified that she went to bed at midnight and that the next thing she remembered was waking up without her t-shirt on and seeing appellant standing over her. Kristina stated that she recognized appellant by his voice and his clothing. She further testified that he told her that if she backed away one more time or said anything he would snap her neck and kill her. Kristina stated that appellant grabbed her, pulled her to the end of the bed and started to touch her breasts and "went down in my pants." She testified that she screamed but he did not stop until her sister came up the stairs. She stated that appellant then ran to her sister in the other bedroom and that she heard a smack. When she yelled to appellant, he came back to her room, they fought and he left.
 {¶ 22} After the assault, Kristina went downstairs and saw appellant leave. She called her mother, who came home and called the police.
 {¶ 23} Rhonda Thomas, Kristina's twelve-year-old sister, testified as to the events of the night in question. She testified that she knew appellant through her aunt and that the last time she saw him was "the night he snuck in our house." She stated that she was awakened by a noise while she slept in the living room and then went upstairs into one of the bedrooms. She stated that it was dark upstairs and that while she was in the bedroom, appellant came into the room and hit her. He then ran downstairs and she followed him. When he turned around and faced her, she recognized him.
 {¶ 24} Marie Thomas, Kristina's mother, testified as to the phone call she received from her daughter that night at approximately 3:00 a.m. She stated that she went home and talked to her children and then called the police.
 {¶ 25} The state rested and the defense presented several witnesses. Officer William Davis, Toledo Police Department, testified as to his contact with Kristina and her family on the night of November 6, 1999 and as to the break-in and assault as related to him by Kristina. The officer further testified that he arrived at the home at about 3:30 a.m. and that at no time did he observe anyone attempting to tell Kristina what to say or influence her in any manner.
 {¶ 26} Jeniffer Seabron testified that on the night of November 6, 1999, she was working at a bar in central Toledo where appellant was a frequent customer. She stated that she noticed appellant at the bar that night and saw him leave around 2:00 a.m.
 {¶ 27} Tyrone Watson, a friend of appellants, testified that he and appellant left the bar together at approximately 2:00 a.m. that night. He stated that he and appellant sat in Watson's car in the bar parking lot smoking marijuana for about 20 or 30 minutes. Watson further testified that they then drove in separate cars to another bar where they again sat in his car in the parking lot and smoked marijuana. He testified that it was approximately 2:45 a.m. when they arrived at the second bar. He further stated that they left in separate cars at about 3:00 or 3:30 a.m.
 {¶ 28} Appellant then testified as to the events of the night in question. He described his actions earlier that night and stated that he eventually ended up in the parking lot of Jason's Bar and stayed there until it closed. Then, he drove to Player's Club, another bar, where he sat in his friend's car and smoked marijuana. Appellant testified that he left Player's at about 3:30 a.m. and went to his girlfriend's house. He testified that while he was at his girlfriend's house the phone rang but there was no one on the line when he answered. He stated that he pressed "*69" on the phone to call the number back and that Kristina's mother answered. He testified that he then went home to his wife and lied to her about where he had been.
 {¶ 29} The defense rested and the state called three witnesses on rebuttal. Detective James Scott testified that he operated the video equipment at the police station that was used to tape appellant while he was in the interview room following his arrest. Joshua Franks, senior criminalist with the forensics lab at the Toledo Police Department, testified that he examined samples of appellant's fingernails taken on November 6, 1999 after appellant tore some of the nails off in the interview room and tried to swallow them. Franks testified that he did not find any evidence from which he could test for the existence of a person's DNA. He further stated that in a hypothetical situation where an individual was accused of touching a female in the genital area, it was highly improbable that samples of the individual's fingernails would provide sufficient evidence of the female's DNA to show up in normal testing. Sherri Wise, a detective with the Toledo Police Division, testified as to her involvement with this case and stated that she was present when the videotape was made of appellant in the interview room.
 {¶ 30} On January 31, 2001, the jury returned verdicts of guilty as to aggravated burglary and tampering with evidence and not guilty as to gross sexual imposition. On March 2, 2001, the trial court sentenced appellant to ten years for the aggravated burglary conviction and three years for the tampering with evidence conviction with the sentences to be served consecutively. It is from that judgment that appellant appeals.
 {¶ 31} In his first assignment of error, appellant asserts that the trial court erred by refusing his request for a jury view. In support, appellant argues that an accurate understanding of the physical layout of the victim's house was important. Appellant concedes that the layout of the house was explained to the jury by way of several of the state's exhibits and their accompanying descriptions, as well as by way of the testimony of Kristina's mother, but he asserts that the evidence did not provide the clarity that a direct observation of the premises would provide.
 {¶ 32} A trial court has broad discretion in deciding whether to grant a request for a jury view. State v. Zuern (1987), 32 Ohio St.3d 56,58. While appellant argues that the evidence in this case was "extremely tenuous" and that "a finding of harm is evident," he has not shown that the trial court's decision in this case was unreasonable, arbitrary or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. As appellant acknowledges, two witnesses testified as to the layout of the house and the state offered into evidence numerous photographs of the inside of the house. Based on the foregoing, we find that the trial court's denial did not "significantly [undermine] fundamental elements of the defendant's defense." United States v. Scheffer (1998), 523 U.S. 303,315, and appellant's first assignment of error is not well-taken.
 {¶ 33} In his second assignment of error, appellant asserts that finding him guilty of aggravated burglary but not guilty of gross sexual imposition resulted in inconsistent verdicts which violated his rights to due process and to be free from cruel and unusual punishment. He argues that the verdicts are illogical and show that the jury either misunderstood its job and instructions, or made its findings based on reasons other than the evidence.
 {¶ 34} Appellant was charged with and convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides:
 {¶ 35} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 36} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * *."
 {¶ 37} Initially, we note that appellant provides no support at all for his claims that the jury was operating under any misunderstanding or that it based its decisions on anything other than the evidence.
 {¶ 38} Appellant appears to argue that if the jury found him not guilty of the gross sexual imposition charge it could not also find him guilty of aggravated burglary. This is illogical and erroneous. A finding of guilty as to the elements of gross sexual imposition is not necessary for a finding of guilty as to aggravated burglary. As set forth above, R.C. 2911.11(A)(1) requires a finding that the offender inflicted, or attempted or threatened to inflict, physical harm on another; there is no requirement of sexual contact such as that which constitutes gross sexual imposition. Ohio courts have held that consistency between verdicts on multiple counts of an indictment is unnecessary. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." State v. Adams
(1978), 53 Ohio St.2d 223, paragraph 2 of the syllabus. The jury clearly found that the evidence was insufficient to show that appellant committed gross sexual imposition. The jury then found that there was evidence that appellant had inflicted, or attempted or threatened to inflict, physical harm upon Kristina when he was in the house. Based on the foregoing, we find that there was no inconsistency of verdicts in this case and, accordingly, appellant's second assignment of error is not well-taken.
 {¶ 39} In his third assignment of error, appellant asserts that the verdicts were against the manifest weight of the evidence. As to the aggravated burglary conviction, appellant argues that there was no evidence that a trespass occurred. Appellant asserts that it is perfectly reasonable to infer that he had "blanket permission" to enter the house, since he was known to the entire family and was dating a relative, and suggests that it is possible that one of the residents let him in. Appellant further argues that there was no evidence that he had purpose to commit a criminal offense. He also asserts that Kristina's testimony was not credible and that it was contradicted by her sister Rhonda's testimony. Finally, appellant asserts that the evidence failed to show that appellant inflicted, attempted to inflict, or threatened physical harm.
 {¶ 40} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 41} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
 {¶ 42} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 43} We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of aggravated burglary. While there were some inconsistencies between the testimony of Kristina and her sister, Kristina testified unequivocally that appellant went into the house during the night of November 6, 1999, without privilege to do so, and that he entered her bedroom and threatened, as well as actually inflicted, physical harm upon her. The jury clearly attached a greater amount of credibility to the testimony of the victim in this case and inferred therefrom that appellant did not have "blanket permission" to enter the house at will and entered with purpose to commit a criminal offense. Based on the foregoing, appellant's argument that the verdict as to aggravated burglary was against the weight of the evidence is without merit.
 {¶ 44} Appellant also argues that his conviction on one count of tampering with evidence was against the weight of the evidence. Appellant claims that when he tore off his fingernails in the interrogation room and attempted to swallow them he was trying to destroy evidence that he had cocaine in his possession and that, since he was not charged with possession of drugs, his efforts to destroy that evidence were not relevant to this case and did not constitute tampering with evidence.
 {¶ 45} R.C. 2921.11(A)(1) provides:
 {¶ 46} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 {¶ 47} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation; * * *"
 {¶ 48} Just before appellant began tearing off his fingernails he was told by Detective Culpert that his nails were considered potential evidence. The police did not know that appellant had cocaine hidden on his person, and whether or not the cocaine was in fact there is irrelevant. Appellant was put on notice that the police wanted to cut his nails to check for traces of the victim's DNA and appellant knew that when he attempted to impair his fingernails' value as evidence. While he may have been attempting to destroy evidence of cocaine in his possession, he was at the same time also impairing the availability of his fingernails as evidence in the investigation of the burglary and gross sexual imposition. Accordingly, appellant's second argument is without merit.
 {¶ 49} On consideration of the foregoing, we find that the guilty verdicts were not against the weight of the evidence and appellant's third assignment of error is not well-taken.
 {¶ 50} In his fourth assignment of error, appellant asserts that the trial court erred by imposing the maximum sentence of ten years for aggravated burglary. Appellant does not contend that the trial court failed to comply with the requirements of R.C. 2929.14(C) and2929.19(B)(2)(d), which set forth the circumstances under which the court may impose a maximum sentence and which state that the trial court must give its reasons for selecting the sentence imposed. Rather, appellant asserts that his sentence is not consistent with sentences imposed for similar crimes committed by similar offenders and therefore violates R.C. 2929.11(B), which provides:
 {¶ 51} "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." [Emphasis added.]
 {¶ 52} In support of his argument, appellant cites this court's decision in State v. Williams (Nov. 30, 2000), Lucas App. No. L-00-1027 and L-00-1028. In Williams, this court found that Williams' six-year sentence for two counts of aggravated vehicular homicide was not "consistent with sentences imposed for similar crimes committed by similar offenders." Williams was driving when he caused the death of two people while speeding. He had never served a prison term. His case was compared to other cases wherein a motorist had caused the death of someone while speeding. His sentence was also compared to cases wherein a motorist had caused the death of someone while driving under the influence of alcohol. This court found that Williams' sentence was not consistent with other sentences imposed for similar crimes.
 {¶ 53} Appellant herein contends his sentence is not consistent with the sentences imposed in State v. Williams (Aug. 11, 2000), Lucas App. No. L-98-1409; State v. Allen (Dec. 3, 1999), Lucas App. No. L-98-1383; State v. Helms (Aug. 25, 2000), Lucas App. No. L-99-1264;State v. Laser (Apr. 10, 1998), Huron App. No. H-97-019 and State v.Barnett (Mar. 31, 1998), Huron App. No. H-97-020. We disagree with appellant's analysis.
 {¶ 54} In each of the cases cited by appellant the defendant was convicted of aggravated burglary, and in each case a sentence of nine years was imposed, with the exception of Barnett, who received an eight-year sentence. In this case, appellant was sentenced to ten years. Appellant argues at length that the crime he committed did not constitute "the worst form of the offense" because the victims' injuries, according to him, were "slight." In each of the cases cited, however, including this one, the burglary occurred during the middle of the night when the victims were sleeping in their beds. In Williams, Lucas App. No. L-98-1409, the victims were children, as were the victims in this case.
 {¶ 55} We further note that appellant's past criminal record clearly influenced the trial court's sentencing considerations in this case. Laser, supra, is the only one of the cases cited above in which the defendant's criminal record was noted. At appellant's sentencing hearing the trial court noted that since the age of eleven, appellant has spent almost all of his life in some form of restrictive institutional setting due to his behavior, beginning in approximately 1969. The trial court also noted that in approximately 1972 appellant was certified to stand trial as an adult on a charge of kidnaping and was sentenced to 5 to 30 years incarceration. While on parole for that conviction, appellant was convicted of felonious assault. The trial court further noted that appellant has a significant history of violent offenses and was once charged with attempted murder. Appellant has seven felony and four misdemeanor convictions as an adult. Based on the foregoing, when compared to the appellants in the cases cited above, this court finds that, while the crimes committed were similar, due to appellant's criminal history he is not a "similar offender." Accordingly, the trial court did not err by imposing the maximum sentence of ten years and appellant's fourth assignment of error is not well-taken.
 {¶ 56} In his fifth assignment of error, appellant asserts that the imposition of consecutive sentences for his two convictions without a special jury finding was error because the total time of incarceration of 13 years exceeds the statutory maximum for either one of the offenses. The statutory maximum for aggravated burglary is ten years; the statutory maximum for tampering with evidence is five years. Appellant was sentenced to serve ten years for the aggravated burglary conviction and three years for the tampering with evidence conviction. Appellant asserts that Apprendi v. New Jersey (2000), 530 U.S. 466, requires a special jury finding whenever the total period of incarceration imposed with consecutive sentences exceeds the statutory maximum for any one of the offenses. The holding in Apprendi, however, does not support appellant's claim. The United States Supreme Court in Apprendi held that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in the indictment, submitted to the jury and proven beyond a reasonable doubt. 530 U.S. at 476.
 {¶ 57} In this case, appellant was not sentenced beyond the statutory maximum for either of the offenses for which he was convicted. The individual sentences were lawful and were simply ordered to be served consecutively. The sentence was not error and appellant's fifth assignment of error is not well-taken.
 {¶ 58} In his seventh assignment of error, appellant asserts that he was denied effective assistance of counsel when trial counsel did not call Detective Sherri Wise as a witness. Appellant asserts that he and his trial counsel disagreed as to the calling of several witnesses. Appellant specifically wanted trial counsel to call Detective Wise and counsel disagreed. The record reflects that counsel conceded that he would call this witness if appellant insisted. Wise was not called as a witness during appellant's case in chief but was called by the state during rebuttal. When trial counsel attempted to ask questions beyond the scope of rebuttal direct examination, the prosecutor objected and the objection was sustained. Appellant now argues that counsel was unable to question the witness as to inconsistencies between what witnesses at the scene reported to the detective and what they testified to at trial. Appellant further argues that trial counsel should have known that he would not be permitted to explore those contradictions on rebuttal cross-examination and that he should have called her in appellant's case in chief rather than waiting for the state to call her on rebuttal.
 {¶ 59} To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984),466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. Statev. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 60} Trial counsel's decisions as to which witnesses to call at trial fall within the realm of trial strategy and generally do not give rise to a claim of ineffective assistance of counsel. State v. Smith
(1996), 115 Ohio App.3d 419, paragraph nine of the syllabus; State v.Clayton (1980), 62 Ohio St.2d 45, 49. Further, it is well-established that the decision by defense counsel not to call a witness does not constitute ineffective assistance of counsel absent a showing of specific prejudice. State v. Williams (1991), 74 Ohio App.3d 686, 695. Appellant argues at length that Detective Wise's testimony would have been valuable because the not guilty verdicts as to some of the charges in the case demonstrated that the jury did not believe all of the state's evidence. He also argues that the jury's inability to reach a verdict at the first trial, where Detective Wise was called in the state's case in chief, and the guilty verdicts at the second trial when the detective's testimony was limited to rebuttal, show that her testimony would have been valuable to his defense.
 {¶ 61} This court has thoroughly reviewed the entire record of proceedings in the trial court, as well as the detective's testimony at the first trial, and we find that appellant has not shown that trial counsel's failure to call Detective Wise as part of the defense case in chief was prejudicial. Appellant has failed to show a reasonable probability that, but for counsel's decision not to call the detective, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Further, the record reflects that trial counsel went on the record in chambers during the trial to express his "wholehearted tactical opinion" that the witnesses appellant wanted to call would not be beneficial to his defense and were actually potentially detrimental. It is clear to this court that trial counsel's decision not to call Detective Wise was a part of his trial strategy and does not give rise to a claim of ineffective assistance of counsel. Accordingly, appellant's seventh assignment of error is not well-taken.
 {¶ 62} In his sixth assignment of error, appellant asserts that it was plain error for the trial court to permit the jurors to ask questions of witnesses. In this case, the trial court informed the jurors at the start of the trial that they would be permitted to ask questions of any of the witnesses. The judge explained that after counsel had finished questioning a witness, each juror would submit a piece of paper to the bailiff. Any juror with a question was to write it on the paper; any juror without a question was to so indicate in writing on the paper. The papers were collected and counsel and the court met at sidebar to discuss the admissibility of each question; those questions that were deemed admissible were asked of the witness by the judge. Counsel were then permitted to ask follow-up questions. At appellant's trial, the jurors had questions for every witness. Some of the questions were determined not in conformance with the Ohio Rules of Evidence and were not asked; other questions were asked of the witnesses.
 {¶ 63} Appellant asserts that questioning by jurors is inherently prejudicial and violates a defendant's rights to due process and a fair trial. When the jurors are permitted to ask questions, appellant argues, they are no longer neutral factfinders but assume the position of advocates and undermine the job done by the attorneys.
 {¶ 64} The Supreme Court of Ohio has not ruled on this issue, although the question is currently pending before that court in State v. Fisher, 10th Dist. No. 01AP-614, 2001-Ohio-8772. This court, however, considered and ruled on this issue in State v. Noser (Dec. 7, 2001), Lucas App. No. L-00-1154. In Noser, we found that, given the proper controls and guidelines, a trial court does not abuse its discretion when it permits jurors to ask questions of witnesses. Based on the foregoing, we find appellant's sixth assignment of error not well-taken.
 {¶ 65} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
 {¶ 66} Because our decision is in conflict with the judgment of the First District Court of Appeals in State v. Gilden (June 30, 2001), Tuscarawas App. No. 93 AP 100075, on the issue of whether a trial court abuses its discretion when it permits jurors to ask questions of witnesses, we certify the record of this case to the Supreme Court of Ohio for review and final determination on that issue. The parties are directed to S.Ct. Prac.R. IV for guidance.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.