JOURNAL ENTRY and OPINION
Appellant William Kimbrough III appeals the decision of the trial court convicting him of forcible rape and kidnapping without sexual motivation and sentencing him accordingly. William Kimbrough III assigns the following four errors for our review:
 I. IT WAS ERROR FOR THE JURY TO RETURN INCONSISTENT VERDICTS AS TO THE KIDNAPPING CHARGE.
 II. THERE WAS NO EVIDENCE OF THE ELEMENT OF FORCE AND THE JURY ERRED IN FINDING THAT THE RAPE WAS COMMITTED BY FORCE.
 III. THE ADMISSION OF MINOR CHILD'S OUT OF COURT STATEMENTS INTO EVIDENCE WAS IN CONTRAVENTION OF RULE 807 AND AFFECTED SUBSTANTIAL RIGHTS OF DEFENDANT, WILLIAM KIMBROUGH, III.
 IV. THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL RESULTING IN PREJUDICE TO THE DEFENDANT-APPELLANT IN VIOLATION OF THE VI AMENDMENT TO THE UNITED STATES CONSTITUTION.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
William Kimbrough III was charged with two counts of rape and one count of kidnapping involving an eleven year old girl.[1] The rape counts each included a sexually violent predator specification. The kidnapping count included a sexual motivation specification and a sexually violent predator specification. Three other men were also charged with raping and kidnapping the victim. Curtis Sanders a.k.a. Uncle and Safabian Stearns were tried along with Kimbrough. Kimbrough's father, William Kimbrough Jr., pleaded guilty to kidnapping and rape and agreed to testify for the prosecution.
At trial, the State presented the testimony of the victim, T.G.[2] T.G. testified that, on September 6, 1998, she was walking to church when she encountered Safabian Stearns in the parking lot of a neighborhood recreation center. Stearns asked her if she wanted to make some money — first $20.00 and then $50.00. When T.G. replied no, Stearns took her from the recreation center parking lot and walked her to Curtis Sanders' home at 617 E. 123rd Street. T.G. testified that, once she was inside the home, Stearns forced her to perform oral sex upon him, fingered her private part and orally stimulated her breasts. She also stated that Curtis Sanders forced her to perform oral sex upon him, then donned a condom and vaginally penetrated her. Thereafter, T.G. testified that William Kimbrough, Jr. took her across the street to his house at 626 E. 123rd Street. He took her to his bedroom, where he performed cunnilingus upon her and vaginally penetrated her. William Kimbrough, Jr.'s son, William Kimbrough III arrived at the house. T.G. testified that William Kimbrough, Jr. took her outside and put her in William Kimbrough III's car.
William Kimbrough III drove T.G. to the parking lot of a nearby YMCA where he forced her to perform oral sex upon him, then donned a condom and vaginally penetrated her. He then took her back to William Kimbrough, Jr.'s house. He took her inside, told her to sit down, turned on the television, then left and locked the door. T.G. testified that William Kimbrough, Jr. released her the next morning and she began walking to a relative's house.
Cleveland police officer Joseph Mitchell was patrolling the area of E. 117th and St. Clair when he spotted a young girl who matched the description of an eleven year old girl who had been reported missing. He approached the girl, who told him her name and that she had been raped. Mitchell took T.G. to the hospital where a medical examination was done and a rape kit was prepared.
Upon her release from the hospital, T.G. took Officer Mitchell to the two houses on E. 123rd street where she was attacked. T.G. later identified William Kimbrough III and Safabian Stearns from lineups.
William Kimbrough, Jr. admitted having sexual intercourse with T.G. and having her perform oral sex upon him. He denied knowing that T.G. was a minor. He stated that, while T.G. was at Sanders' house, he saw Stearns and Sanders fondling T.G.'s breasts.
Stearns testified in his own defense. He admitted encountering T.G. in the recreation center parking lot but stated that she initiated the conversation by asking him for a light. He stated that, after some conversation, he and T.G. went to the rear of the recreation center where he kissed her and fondled her breasts for approximately ten minutes. Stearns testified that T.G. consented to his actions. He told T.G. that he had to take care of something and asked her to wait for him. He said that she agreed and that, when he returned 15 minutes later, she was waiting for him. Stearns said that they walked to Sanders' house. Once there, he asked if Sanders had any El Producto cigars. When Sanders replied that he had none, Stearns testified that he left Sanders' house to go to the store and did not see T.G. any more that evening.
Sanders admitted that T.G. was at his house on the evening in question, but denied assaulting her. He testified that he was outside on the back porch talking on the phone when T.G. arrived with Stearns and that he remained on the phone for twenty-to-forty minutes. He testified that when he got off the phone, he saw T.G. in his living room and asked her why she was still there. He stated that T.G. told him she was waiting for Stearns. Sanders told her she would have to leave and William Kimbrough, Jr. offered to drive her home. Sanders testified that T.G. left with William Kimbrough, Jr. and he did not see her any more. William Kimbrough III did not testify at trial.
The jury convicted William Kimbrough III of kidnapping and one count of forcible rape. The jury found that T.G. was under the age of thirteen. The jury also found that the kidnapping was not committed with a sexual motivation. At his sentencing hearing, William Kimbrough III's trial counsel and the prosecutor stipulated to his classification as a sexually oriented offender. William Kimbrough III was sentenced to life imprisonment with the possibility of parole. The court also imposed a three-year sentence for kidnapping. The three-year sentence for kidnapping was merged with the life sentence. William Kimbrough III was also disignated a sexually oriented offender.[3] This appeal followed.
In his first assignment of error, William Kimbrough III argues the jury improperly returned inconsistent verdicts as to the charge of kidnapping. Specifically, he argues it was not possible for the jury to convict him of kidnapping for the purpose of engaging in sexual activity while finding him not guilty of the sexual motivation specification. We disagree.
R.C. 2905.01 defines kidnapping as follows:
 No person, by force, threat, or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage; (2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious harm on the victim or another; (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.
R.C. 2907.01(C) defines sexual activity to include sexual conduct, sexual contact, or both.[4] William Kimbrough III was indicted for kidnapping with a sexual motivation specification under R.C. 2971.01(K). R.C. 2971.01(K) provides:
 Sexual motivation specification means for kidnapping with a se specification * * * that charges that a person charged with a * * * kidnapping offense committed the offense with a sexual motivation.
Sexual motivation means a purpose to gratify the sexual needs or desires of the offender. R.C. 2971.01(J).
The jury's finding on the sexual motivation specification does not impact its finding that William Kimbrough III was guilty of kidnapping for the purpose of engaging in sexual activity. [A] finding on a specification that is inconsistent with a guilty finding on the principal charge will not undermine the guilty finding on the principal charge where the guilty finding on the principal charge is supported by the evidence. State v. DeArmitt
(Jan. 15, 1997), Wayne App. No. 96CA0021, unreported, appeal dismissed (1997), 80 Ohio St.3d 1411, 683 N.E.2d 704, citing Statev. Burton (Mar. 8, 1996), Sandusky App. No. S-95-008, unreported and State v. Wilson (Jan. 21, 1992), Clark App. No. 2803, unreported, jurisdictional motion overruled (1992), 63 Ohio St.3d 1474,591 N.E.2d 244. Specifications are considered after, and in addition to, the finding of guilt on the principal charge. Id.,
citing State v. Perryman (1976), 49 Ohio St.2d 14, 26,358 N.E.2d 1040, 1048, vacated in part on other grounds (1978),438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156.
In State v. Poston (Mar. 2, 2000), Cuyahoga App. No. 75846, unreported, we held that irreconcilable verdicts are not a basis for reversing a conviction.
 In criminal cases, as contrasted with civil cases * * * Ohio follows the general rule that consistency between verdicts on the several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.
Id., citing State v. Adams (1978), 53 Ohio St.2d 223,374 N.E.2d 137, vacated in part on other grounds (1978), 439 U.S. 811,58 L.Ed.2d 103, 99 S.Ct. 69.
In this case, the evidence supported the jury's finding that William Kimbrough III was guilty of kidnapping for the purpose of sexual activity with the victim against her will. The fact that it reached a different conclusion on the separate sexual motivation does not undermine its decision to convict William Kimbrough III on the kidnapping count. William Kimbrough III's first assignment of error is overruled.
In his second assignment of error, William Kimbrough III argues the jury improperly convicted him of forcible rape where there was no evidence of force. R.C. 2901.01(A)(1) defines force as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. The Ohio Supreme Court has held that the force and violence necessary to commit the crime of rape depends upon, inter alia, the age, size and strength of the parties. State v. Eskridge (1988), 38 Ohio St.3d 56,526 N.E.2d 304, at paragraph one of the syllabus. In State v. Dye
(1998), 82 Ohio St.3d 323, 695 N.E.2d 763, at syllabus, the court held that a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint. The Dye
court stated that a child could not be found to have consented to rape. Id. at 327, 695 N.E.2d at 766. The court also noted that, although proving the force necessary to impose a life sentence upon a defendant required some amount of force beyond that force inherent in the crime itself, the force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. Id.,
citing Eskridge, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306 andState v. Fowler (1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390,395.
This court addressed the issue in State v. Bluford (Dec. 9, 1999), Cuyahoga App. No. 75228, unreported, appeal dismissed (2000), 88 Ohio St.3d 1479, 727 N.E.2d 130. In Bluford, we held that the force element of rape was met where the evidence established that the child victim submitted to the rape because she was afraid of the adult defendant. In this case, T.G. testified he made me do it. She then testified on three separate occasions in three different locations she experienced fear while in William Kimbrogh III's presence. Additionally, the State showed that T.G. was just eleven years old at the time of the attack, while William Kimbrough III was twenty-three. The record also reveals that William Kimbrough III was six feet, three inches tall and weighed two hundred forty-five pounds. We find that the totality of evidence was sufficient to support a finding that T.G.'s will was overcome by fear of William Kimbrough III. Accordingly, we overrule William Kimbrough III's second assignment of error.
In his third assignment of error, William Kimbrough III argues the trial court improperly admitted out-of-court statements made by T.G. in violation of Evid.R. 807. We find that Evid.R. 807(A) is inapplicable to this case since, by its terms, it applies to out-of-court statements made by a child who is under twelve years of age at the time of trial or hearing. At the time of trial, T.G. was twelve years old. Specifically, William Kimbrough challenges testimony by Officer Joseph Mitchell, nurses Lauren McAliley and Ann Marie Darby, and Detective Laura Parker about what T.G. told them about the attacks. William Kimbrough III argues that T.G.'s testimony was not persuasive and that the admission of the challenged testimony fortified and gave credence to T.G.'s testimony. However, it is well settled that evaluating the credibility of witnesses' testimony is a determination to be made by the jury and that an appellate court must not substitute its judgment for that of the jury on issues of credibility. See State v. Hood (1999), 132 Ohio App.3d 334, 340,724 N.E.2d 1238, 1242. See, also State v. Mundy (1994),99 Ohio App.3d 275, 318, 650 N.E.2d 502, 529.
In any event, the challenged testimony was merely cumulative of T.G.'s testimony and any error in its admission was harmless in light of the other evidence properly admitted to support William Kimbrough III's conviction. See State v. Williams (1983), 6 Ohio St.3d 281,290, 452 N.E.2d 1323, 1333, certiorari denied, (1983),464 U.S. 1020, 104 S.Ct. 554, 78 L.Ed.2d 727, citing Harrington v.California (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 1728,23 L.Ed.2d 284, 288. (Error will not contribute to the defendant's conviction when the remaining, properly admitted evidence, standing alone, constitutes overwhelming proof of the defendant's guilt.) Accordingly, we overrule William Kimbrough III's third assignment of error.
In his fourth assignment of error, William Kimbrough III argues he was denied the effective assistance of trial counsel by his trial counsel's failure to adequately argue his Crim.R. 29 motion for acquittal, failure to assert the absence of force as a defense to the rape counts, failure to object to the admission of testimony by others as to statements made to them by T.G.; failure to cross-examine T.G., and bizarre remarks in his closing argument to the jury.
In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate that trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for trial counsel's errors, the result of the trial would have been different. See Lakewood v. Town (1995), 106 Ohio App.3d 521,525-526, 666 N.E.2d 599, 602, appeal dismissed (1996), 75 Ohio St.3d 1404,661 N.E.2d 754, citing Strickland v. Washington (1984),466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674,693, 698 and State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph one of syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
However, in order to demonstrate that trial counsel's performance was deficient, an appellant must overcome a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance and could be considered sound trial strategy. State v. Bugg (Sept. 30, 1999), Cuyahoga App. No. 74847, unreported, citing Strickland, 466 U.S. at 689,104 S.Ct. at 2065, 80 L.Ed.2d at 694-695. In this case, William Kimbrough III's trial counsel made evident that his theory of defense was based upon a lack of physical evidence connecting William Kimbrough III to the crime. He even explained his decision not to cross examine the victim.
 I told you there was no DNA. There was none. I told you there would be no scientific evidence. There was none. I told you there would be no pubic hair findings. There was none. I told you there would be no car brought into the courtroom or photograph of a car, or any evidence from a car brought into this courtroom. There wasn't any. I kept my promise.
(Tr. 1476-1477.)
 There was no need to cross examine the girl as I saw from my perspective. No need to do that. No need to put her through any more than she had to. * * * The only way I would do it is if I thought it was absolutely necessary. I didn't believe it was absolutely necessary. Because, as I told you, we knew what she was going to say by the very charges that were brought. We knew that and that's what she said, but there was nothing to corroborate.
(Tr. 1477-1478.)
These comments evidence trial counsel's strategic decision to challenge the credibility of the victim and accentuate the absence of corroborating physical evidence. The fact that his strategy was unsuccessful does not require us to find that trial counsel's performance was defective. See State v. Bey (1999), 85 Ohio St.3d 487,493, 709 N.E.2d 484, 493, citing State v. Mason (1998),82 Ohio St.3d 144, 157, 694 N.E.2d 932, 949, certiorari denied (1998),525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (A court will not second-guess trial strategy decisions.) Because William Kimbrough III has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness, we overrule his fourth assignment of error. See State v. Madrigal
(2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 64, reconsideration denied (2000), 88 Ohio St.3d 1428, 723 N.E.2d 1115, citingStrickland, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. (A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other.)
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and KENNETH A. ROCCO, J., CONCUR.
 ________________________________ PATRICIA ANN BLACKMON, JUDGE
[1] He was also charged with having a weapon while under disability, but that count was dismissed by the state before sentencing. The state also dismissed the sexually violent predator specifications.
[2] In order to protect the minor's privacy, we will refer to her only by her initials.
[3] The sentencing addendum signed by the trial court erroneously indicates that William Kimbrough III was designated as a sexual predator. However, the transcript of the sentencing hearing and the trial court's journal entry of May 3, 1999 clearly indicate that William Kimbrough III was classified as a sexually oriented offender.
[4] Sexual conduct means vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. R.C. 2907.01(A). Sexual contact means any touching of an erogenous zone of another, including the thigh, genitals, buttock, pubic region, or the breast of a female, for the purpose of sexual gratification of either person.