[Cite as *State v. Miller*, 2016-Ohio-8248.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 16-CA-00004 |
| NANCY MILLER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Perry County Court of
                                Common Pleas, Case No. 15-CR-0070


JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         December 19, 2016

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOSEPH A. FLAUTT                       GREGORY SCOTT ROBEY
Prosecuting Attorney                   Robey & Robey
111 North High Street                  14402 Granger Road
P.O. Box 569                           Cleveland, Ohio 44137
New Lexington, Ohio 43764-0569

*Hoffman, J.*

**{¶1}** Defendant-appellant Nancy L. Miller appeals her conviction and sentence entered by the Perry County Court of Common Pleas on one count of sexual battery, in violation of R.C. 2907.03(A)(5). Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** In April of 2011, Appellant and her husband K.M. adopted four children: P.M., C.K.M., J.M. and A.M. Appellant and her husband had three adult natural children who were emancipated at all times relevant: R.M., C.M. and K.M.[1]

**{¶3}** Over the course of time, inappropriate relations developed between Appellant and P.M., her minor, adopted son.

**{¶4}** C.K.M., Appellant's adoptive daughter and P.M.'s sister, testified at trial as to incidents in which she observed Appellant kissing P.M.; an incident in which she observed Appellant slapping and punching P.M.; and a conversation wherein Appellant called P.M. a "cheat," stating he used her, due to P.M.'s refusal to engage in sexual relations with Appellant. C.K.M. noted, during the conversation, Appellant was "smiling" and "smirking."

**{¶5}** In the latter part of May, 2015, Appellant told C.K.M. she went to P.M.'s bedroom and kissed him. She told him she felt the same way about him as he did for her. C.K.M. testified Appellant never claimed P.M. forced himself on her. Rather, Appellant told her, when P.M. refused to engage in sexual relations with her, she did not like it.

---

[1] This Court utilized the initials, including the middle initial, of Appellant's adoptive daughter C.K.M., in order to distinguish the testimony of Appellant's natural born daughter, C.M.

Appellant specifically told C.K.M. the two had engaged in sexual relations on several occasions. Further, C.K.M. testified she observed K.M., her adoptive father, angry as he thought P.M. and Appellant were "screwing each other."

{¶6} R.M., Appellant's natural daughter, testified at trial Appellant had a partiality toward P.M. after the adoption. She testified she personally observed Appellant hugging and kissing P.M.

{¶7} On May 29, 2015, Appellant told R.M. during a telephone conversation, "you'll never forgive me for what I've done." Appellant proceeded to tell R.M. she was in love with P.M., and they had a connection she did not have with her husband, K.M. Appellant told R.M. she and P.M. had sex three times in May of 2015. Appellant admitted P.M. had tried to stop the relationship. Appellant further admitted to laying in P.M.'s bed when he was not home, so she could smell his scent. Appellant told R.M. she punched P.M. and took his video games when he refused her. Appellant stated she "couldn't breathe" when boundaries were set with regard to P.M. R.M. noted Appellant told her about the incidents like telling a "love story."

{¶8} C.M., Appellant's natural daughter, testified at trial as to a conversation she had with her mother in the latter part of May, 2015. Appellant told C.M. she sought medical treatment and was in counseling. When C.M. asked Appellant if she was engaged in sexual relations with P.M., Appellant stated she couldn't answer the question, at which point C.M. knew Appellant had sexual relations with P.M.

{¶9} Appellant then admitted to C.M. she had sexual relations with P.M. in the month of May, 2015. She stated the conduct occurred three times, and admitted to smelling his bed while he was at school.

{¶10} Appellant told C.M. she had accidentally kissed P.M. on the mouth in front of the family when "she was drunk." In addition, Appellant stated P.M. wanted to end their relationship and she felt betrayed, eventually smashing his video game equipment.

{¶11} The conversation occurred the day before Appellant's arrest. C.M. stated the conversation with Appellant, was like she was "a teenager excited about a new boyfriend."

{¶12} P.M. testified the family moved to Washington for a brief period, and moved back after he was accused of "being weird" and "developing feelings for Nancy." His attachment to Appellant caused a lot of family fighting.

{¶13} It is undisputed, over a course of time, P.M. developed an unnatural attraction to Appellant. As a result, Appellant and her husband took P.M. to counseling at NewSource Counseling Center with Luke Sargent, a licensed clinical counselor. As a result of the counseling, Appellant testified she and K.M. set boundaries for P.M.

{¶14} P.M. testified Appellant eventually forced him to engage in sexual relations. Appellant would kiss him on the mouth when he would go to bed at night, and at one point she kissed him on the mouth while watching a movie. Appellant's husband, K.M. witnessed the kiss, which Appellant blamed on her "being drunk."

{¶15} P.M. testified he eventually had a conversation with K.M. about Appellant's behavior, and K.M. responded by reiterating the inappropriateness of "love" between a son and a mother.

{¶16} Appellant told P.M. the boundaries imposed by K.M. after counseling upset her, and she wanted to "love him like a mother shouldn't love a son." P.M. testified Appellant forced him by threats to engage in sexual relations starting in late March of

2015. When he tried to end their relationship, Appellant slapped him and smashed his videogame, threatening a "world of pain."

{¶17} P.M. related three incidents of sexual relations occurring in Appellant's bedroom, the downstairs movie room, and on the basement couch. He stated there was no sexual intercourse during the third occasion as K.M. came home. P.M. admitted to detectives feeling sexual impulses and raging hormones during the time period.

{¶18} Appellant testified at trial P.M. sexually assaulted her on four separate incidents. As evidence, Appellant introduced a calendar with dates of the sexual conduct indicated, a shirt with torn off buttons, a torn nightgown, and photos of bruising to her arms and legs, which photos she herself had taken. Appellant admitted she did not provide any of the exhibits to law enforcement during the investigation. Appellant further admitted she never told her husband or law enforcement about the encounters, or about P.M. forcing her into sexual relations.

{¶19} Appellant stated the first incident occurred on May 5, 2015. The second incident occurred in her bathroom, and the third happened in her bedroom. Appellant admitted to telling her daughters of the three sexual incidents, and to not stating she had had been raped or assaulted. She testified she smelled P.M.'s bed when he left for school.

{¶20} K.M., Appellant's husband, testified at trial as to Appellant's suffering from major depression disorder, and undergoing treatment for the same. He further testified to problems incurred with P.M., particularly his looking up pornography of "son does mom" and humping animals. He testified as a result he set boundaries in the house for P.M., and P.M. was not allowed to go near Appellant. K.M. called Children's Services to report

P.M. constantly staring at Appellant, stalking Appellant and following her around the house.

**{¶21}** Appellant's conversation with R.M. occurred on May 29, 2015. R.M. contacted her siblings. As a result, law enforcement and medical assistance were sought with regard to Appellant. On May 30, 2015, Appellant was arrested and eventually hospitalized for treatment.

**{¶22}** On October 20, 2015, Appellant was indicted on three counts of sexual battery, in violation of R.C. 2907.03(A)(5), all felonies of the third degree. The dates alleged in the indictment as to each count were May 1, 2015 to May 30, 2015. Following the presentation of the State's case at trial, the State moved to amend the dates of the indictment to March 1, 2015 through May 31, 2015. The amendment was made pursuant to the testimony at trial of P.M. the first incident occurred in "late March, 2015."

**{¶23}** On November 2, 2015, Appellant moved the trial court for production of P.M.'s Children's Services records. Appellant subpoenaed the records of P.M.'s counseling from Perry County, and counseling relating to his siblings. Appellant further subpoenaed the records from NewSource Counseling and Luke Sargent.

**{¶24}** Via Entry of December 3, 2015, the trial court found the records to be confidential pursuant to R.C. 5153.17, and ordered Perry County Children's Services to submit the requested records for an *in camera* inspection. Via Entry of December 23, 2015, the trial court indicated it had conducted an *in camera* review and determined two documents may be material to the defense. The trial court ordered pages 17 and 36 of the activity log report be provided to counsel.

**{¶25}** On February 16, 2016, Appellant filed a motion in limine to prohibit the State from introducing inadmissible evidence.[2] The State filed a memorandum contra on February 26, 2016, asserting Appellant's argument was speculative. Via Order of March 2, 2016, the trial court denied the motion in limine finding the motion premature and reserving ruling on the motion at the appropriate time.[3]

**{¶26}** On February 19, 2016, Appellant filed a theory of defense instruction to be given in addition to the standard jury instructions. Specifically, Appellant asserted she was entitled to a theory of defense instruction on: 1) questionable credibility of the alleged victim; 2) the insufficient investigation by law enforcement; 3) what was the alleged victim's motive in accusing Defendant; and 4) whether Defendant had the intent to engage in sexual conduct with the victim.

**{¶27}** On March 3, 2016, Appellant filed a memorandum in support of Defendant's offer of 404(B) evidence. The trial court then appointed counsel to represent the minor child, P.M., in this matter.

---

[2] Appellant's motion in limine to prohibit the State from introducing admissible evidence sought to exclude specific testimony offered by Deputy Barringer, caseworker Tiffany Barber, K.M., C.M. and R.M. Appellant sought to exclude testimony of Deputy Barringer and Barber relative to interviews conducted of P.M., C.K.M., R.M., K.M., and C.M. Appellant also sought an order prohibiting Barber from testifying as to the statements of a hospital social worker regarding Appellant. Appellant further sought to prevent Deputy Barringer and Barber from opining as to P.M.'s truthfulness.

Appellant argued any testimony of K.M. would constitute hearsay. Appellant argued C.M. and R.M. would testify as to Appellant's inappropriate dress in the weeks and months prior to the allegations, which testimony would be speculative, prejudicial and irrelevant.

[3] Appellant does not assign as error the trial court's denial of the motion in limine.

**{¶28}** The matter proceeded to jury trial on March 3, 2016. Following the presentation of evidence, the jury found Appellant guilty of sexual battery as set forth in count one of the indictment, and not guilty on the remaining two counts of sexual battery.

**{¶29}** Appellant filed a motion for judgment of acquittal after verdict, pursuant to Criminal Rule 29, and a motion for new trial, pursuant to Criminal Rule 33(A)(5), on March 9, 2016. The State filed a memorandum contra separately as to each motion on March 22, 2016.

**{¶30}** On April 22, 2016, the trial court entered a Return of Verdict and Termination Judgment Entry, sentencing Appellant to a definite term of 42 months in a State Penal Institution, and notifying Appellant a mandatory term of five years post-release control would be imposed and the consequences thereof. The trial court further classified Appellant a Tier III sex offender.

**{¶31}** The trial court denied Appellant's motion for acquittal after verdict and for a new trial via separate entries of April 22, 2016.

**{¶32}** Via Nunc Pro Tunc Return of Verdict and Termination Judgment Entry filed May 6, 2016, the trial court corrected a date in the original entry.

**{¶33}** Appellant filed a notice of appeal, and assigns as error:

**{¶34}** I. THE TRIAL COURT ERRED WHEN IT REFUSED TO ADMIT DEFENSE OFFERED EVIDENCE OF PRIOR BAD ACTS UNDER R. 404(B), THEREBY DEPRIVING APPELLANT OF HER 6TH AMENDMENT RIGHT TO PRESENT A COMPLETE DEFENSE.

**{¶35}** II. THE TRIAL COURT ERRED WHEN IT REFUSED TO PERMIT THE DEFENSE TESTIMONY OF THE LICENSED COUNSELOR FOR THE ALLEGED

VICTIM, THEREBY DEPRIVING APPELLANT OF HER 6TH AMENDMENT RIGHT TO PRESENT A COMPLETE DEFENSE.

{¶36} III. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT.

{¶37} IV. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶38} V. APPELLANT WAS DENIED A FAIR TRIAL DUE TO CUMULATIVE ERRORS BY THE TRIAL COURT.

{¶39} VI. THE TRIAL COURT ERRED WHEN IT PERMITTED THE AMENDMENT OF THE INDICTMENT, THEREBY CHANGING THE NATURE OF THE INDICTMENT, AND DENYING APPELLANT A FAIR TRIAL.

{¶40} VII. THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE JURY INSTRUCTIONS REQUESTED BY THE DEFENSE AND GAVE IMPROPER INSTRUCTIONS ON THE DATES OF THE ALLEGED CRIMES.

{¶41} VIII. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENSE MOTION FOR JUDGMENT OF ACQUITTAL AFTER VERDICT.

{¶42} IX. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENSE MOTION FOR A NEW TRIAL AFTER VERDICT.

{¶43} X. THE TRIAL COURT ERRED WHEN IT IMPOSED A 42 MONTH PRISON TERM THAT IS NOT SUPPORTED BY THE RECORD.

I.

**{¶44}** In the first assignment of error, Appellant argues the trial court erred in not allowing testimony or evidence of prior bad acts of the alleged victim herein, pursuant to Evid. Rule 404(B).

**{¶45}** Specifically, Appellant asserts the trial court erred in not admitting evidence as to P.M.'s alleged sexual assault of his sister; as to P.M.'s alleged inappropriate touching of Appellant's grandchildren; and as to law enforcement finding Appellant's underwear and twine rope in P.M.'s bedroom.[4]

**{¶46}** Appellant argues the evidence demonstrates lack of consent on the part of Appellant, P.M.'s intent to engage in forcible sexual conduct with Appellant, and Appellant's lack of intent to engage in consensual sexual conduct with P.M.

**{¶47}** Evidence Rule 404(B) reads,

> (B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶48}** The rationale for refusing to permit this kind of evidence against a defendant is that "[o]ffering evidence of a person's character poses an inherent risk that the trier of

---

[4] P.M. admitted to using the underwear for masturbation.

fact will be distracted from the central issues in the case, and decide the case based upon the trier's attitude toward a person's character, rather than upon an objective evaluation of the operative facts." *State v. Grubb,* 111 Ohio App.3d 277, 280, 675 N.E.2d 1353 (2d Dist.1996), citing Weissenberger, *Ohio Evidence,* Section 404.4 (1996). "Character evidence is generally excluded not because it lacks relevancy, but because its probative value is substantially outweighed by the danger of unfair prejudice." *Id.,* citing Section 404.2.

**{¶49}** In *State v. Young*, 8th App. No. 92197, 2010-Ohio-3059, the Eighth District held,

> The court, in determining whether prior acts should be admitted, must balance the interests of the victim, which the statute is designed to protect, and the defendant's right to confront and cross-examine the state's witnesses. *State v. Williams* (1986), 21 Ohio St.3d 33, 21 OBR 320, 487 N.E.2d 560. If the evidence in question is merely being used to impeach the victim's credibility, it *** is not of probative value as to the alleged rape itself and should not be admitted. Id. However, if the evidence has probative value to the determinative issue of fact—i.e., whether the victim was raped by the defendant on the date alleged—then the probative value of the testimony outweighs any interest the state has in exclusion. Id. at 36[, 21 OBR 320, 487 N.E.2d 560]. *State v. Yenser,* 176 Ohio App.3d 1, 2008-Ohio-1145, 889 N.E.2d 581, at ¶ 4. See also *State v. Gardner* (1979), 59 Ohio St.2d 14, 18, 13 O.O.3d 8, 391 N.E.2d 337; *79 *State v. Ferguson* (1983),

5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265; *State v. Guthrie* (1993), 86 Ohio App.3d 465, 621 N.E.2d 551.

In addition, although our review of relevant Ohio case law shows that appellate courts have not dealt extensively with this issue, other states have found that the probative value as to prior acts protected by the rape shield statute are dependent on clear proof that they had occurred. *State v. Young*, 2010-Ohio-3059, ¶¶ 17-19.

**{¶50}** On March 3, 2016, the same day as the commencement of trial, Appellant filed a memorandum in support of her offer of 404(B) evidence. Appellant sought to introduce the evidence to establish motive, lack of her intent and intent on the victim's part.

**{¶51}** The trial court reviewed the records and evidence provided *in camera*, and provided the parties with two Activity Log Reports dated December 10, 2015 from Perry County Children's Services. The first indicates C.K.M. disclosed sexual abuse at the hands of P.M. in the past, when she was 10 years of age. The record states the information may or may not have been reported during the investigation and will be followed up with an intake worker. The Activity Log Report indicates the phone call came from K.M., Appellant's husband.

**{¶52}** The second Activity Log Report dated the same date indicates P.M.'s sister told case workers P.M. had underwear belonging to Appellant, his two sisters and a granddaughter in his room. It further stated C.K.M. stated P.M. raped her. The record indicates a long piece of twine was also found in the mattress.

**{¶53}** Prior to the commencement of trial, the trial court stated on the record,

THE COURT: It says: In criminal cases, the proponent of evidence shall provide reasonable notice in advance of trial, or during trial if the Court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial.

The thing about your argument about just a witness, this is the victim, so it's not just any witness. It is the victim, and I have thoroughly reviewed your memorandum and done some research, and I have to agree, though I think that trying to establish that he sexually assaulted [C.K.M.] at a later time would be prejudicial. It would be more prejudicial than the probative value because if it's even true, which we don't even know it's true, I think that's confusing to the jury.

Also, he assaulted a girl, so, therefore, he raped this woman? I think the prejudicial value outweighs the probative value. It's misleading to the jury, and I think it's confusing to the jury. So I'm not going to allow it. Is there anything else you need to put on the record to proffer it or have you covered everything?

MR. ROBEY: I think we've covered everything. Just so we're clear on this though, what I talked about specifically as prior bad acts, we are talking about the accusations of touching grandchildren and sexually assaulting [C.K.M.]. There are other pieces of evidence that my client and her husband have direct knowledge of, such as when they searched his room, they found the underwear, and ropes, and things that he had hidden in his mattress. So those things are not - - you know, they have direct

knowledge of those things, so I just want to be clear on the Court's ruling, and I'll certainly abide by it.

I had asked 404(B) evidence on accusations of touching and rape, and I understand the Court's ruling is to exclude those things, that's fine, but my clients have direct knowledge of those other matters.

THE COURT: You had also placed in your memorandum about the underwear, so I'm excluding that. I don't know what the rope has to do with anything. I mean, you can certainly talk about the finding of rope in his bedroom. I don't see where that's - -

MR. ROBEY: So the Court is saying that there will be no mention of finding underwear?

THE COURT: Not with the way you put it in your memorandum, that he stole his mother's underwear and then masturbated in it. That's what you put in your motion.

MR. ROBEY: That's what he admitted to.

THE COURT: Yes, I'm excluding that as well. Again, confusion, misleading, prejudicial, over probative value. * * *

Tr. at 133-135.

**{¶54}** Upon independent review, we cannot say the trial court abused its discretion in denying Appellant's use of the other acts evidence at trial. The evidence was highly prejudicial to the victim in this matter under Evidence Rule 403(A). Further, the evidence had little probative value in that it did not clearly prove the conduct actually occurred between P.M. and his sister or Appellant's grandchildren. Finally, the evidence may well

have been confusing to the jury as the evidence does not establish the victim raped Appellant, an adult; nor does it necessarily establish she did not consent to the conduct.

{¶55} In addition we find the trial court did not err as a matter of law in finding the evidence as to the underwear, P.M.'s masturbation with the underwear, and twine found in P.M.'s bed highly prejudicial and of little probative value. Testimony at trial established P.M. had an unnatural attachment to Appellant. In addition, Appellant did not clearly prove P.M. engaged in inappropriate conduct with his sisters or her grandchildren. The evidence as to P.M.'s masturbation with the underwear would be highly prejudicial and cause confusion of the issues with the jury. Further, Appellant did not allege the use of rope or twine in her allegations.

{¶56} The first assignment of error is overruled.

II.

{¶57} In the second assignment of error, Appellant maintains the trial court erred in not permitting the testimony of Luke Sargent, a licensed clinical counselor. The trial court found testimonial privilege precluded the testimony from being disclosed.

{¶58} R.C. 2317.02(G)(1)(d) provides for waiver of testimonial privilege if the client of the counselor voluntarily testifies on the same subject. At trial, P.M. testified he underwent counseling prior to the acts alleged herein. Perry County Children's Services requested and received Sargent's records on June 29, 2015. A waiver containing a December 28, 2015 expiration date was signed by the agency as custodian.[5]

{¶59} R.C. 2317.02(G) provides,

---

[5] At trial, the trial court determined the Perry County Children's Services Waiver expired effective December 8, 2015. Appellant does not argue in this appeal or assign as error the trial court's finding.

The following persons shall not testify in certain respects:

* * *

(G)(1) A school guidance counselor who holds a valid educator license from the state board of education as provided for in section 3319.22 of the Revised Code, *a person licensed under Chapter 4757 of the Revised Code as a licensed professional clinical counselor*, licensed professional counselor, social worker, independent social worker, marriage and family therapist or independent marriage and family therapist, or registered under Chapter 4757 of the Revised Code as a social work assistant concerning a confidential communication received from a client in that relation or the person's advice to a client unless any of the following applies:

* * *

(d) The client voluntarily testifies, in which case the school guidance counselor or person licensed or registered under Chapter 4757 of the Revised Code may be compelled to testify on the same subject.

{¶60} Here, P.M. testified at trial, on cross-examination, as to attending counseling with Luke Sargent. He testified he went to counseling for a "couple months." Tr. at 204. He stated the counseling was "helpful." However, P.M. never testified on the record as to the nature of the counseling or any specific discussions he had with Luke Sargent.

**{¶61}** We find P.M. did not voluntarily testify as to the nature and discussions of his counseling with Luke Sargent; therefore, Luke Sargent could not be compelled to testify on the subject without a valid waiver from P.M.

**{¶62}** Further, testimony on cross-examination is not voluntary and not a waiver of privilege. *Carver v. Deerfield Twp.* (2000), 139 Ohio App.3d 64. Cross-examination testimony is not voluntary, "as the client and his counsel do not have control of the questions or the information which is to be elicited." *Tandon v. Tandon* (Dec. 27, 1999), Jefferson App. No. 99 JE 36, unreported, at 3, 1999 WL 1279162.

**{¶63}** The second assignment of error is overruled.

### III. and IV.

**{¶64}** Appellant's third and fourth assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

**{¶65}** Appellant maintains her conviction for sexual battery was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶66}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶67}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶68}** A manifest-weight challenge "concerns 'the inclination of the *greater amount of credible evidence * * ** to support one side of the issue rather than the other.'" (Emphasis in original) *State v. Montgomery,* Slip Opinion No. 2016–Ohio–5487, —— N.E.3d ——, ¶ 75 (Ohio), citing *Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In addressing a manifest-weight argument, we are able to consider the credibility of the witnesses. *State v. McCrary,* 10th Dist. Franklin No. 10AP–881, 2011–Ohio–3161, ¶ 13, citing *State v. Cattledge,* 10th Dist. No. 10AP–105, 2010–Ohio–4953, ¶ 6.

**{¶69}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86

L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶70}** The jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶71}** Appellant was convicted of one count of sexual battery, in violation of R.C. 2907.03(A)(5), which reads,

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

\*\*\*

(5) The offender is the other person's natural or adoptive parent, or

a stepparent, or guardian, custodian, or person in loco parentis of the other

person.

**{¶72}** We find there was more than sufficient evidence, when viewed in a light

most favorable to the State, a rational trier of fact could have found each element of sexual

battery, and the evidence would convince the average mind beyond a reasonable doubt

Appellant committed the offense. Appellant admitted to her daughters she had engaged

in sexual relations with P.M. at least three times during the month of May, 2015. Appellant

did not tell them the acts were forced by P.M.; rather, she admitted to smelling P.M.'s bed

while he was away. Appellant's daughters stated she told them about the incident as

though she was telling a "love story." In addition, P.M. testified Appellant forced him by

threat to engage in the sexual incidents. The weight of the evidence and the credibility of

the witnesses is for the trier of fact.

**{¶73}** Appellant's third and fourth assigned errors are overruled.

V.

**{¶74}** In the fifth assignment of error, Appellant maintains she was denied a fair

trial due to cumulative error by the trial court.  We disagree.

**{¶75}** In *State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506,

the Ohio Supreme Court recognized the doctrine of cumulative error. However, as

explained in *State v. Bethel,* 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, it is

simply not enough to intone the phrase "cumulative error" *State v. Sapp,* 105 Ohio St.3d

104, 2004–Ohio–7008, 822 N.E.2d 1239.  Further, where we have found the trial court

did not err, cumulative error is simply inapplicable. *State v. Carter,* 5th Dist. No.2002CA00125, 2003–Ohio1313 at ¶ 37.

{¶76} Appellant maintains the trial court committed plain error in limiting the testimony of C.M. and K.M. Specifically, Appellant cites the testimony of C.M., Appellant's natural daughter, as to P.M.'s "inappropriate behaviors" with regard to Appellant, and the possibility the behaviors would "cross-over" to her children. Tr. at 183-184. When asked what "struck" her as inappropriate, the trial court ruled the evidence had been excluded as Evidence Rule 404(B) other acts evidence. As set forth in our analysis and disposition of Appellant's first assignment of error, the trial court did not abuse its discretion in excluding the testimony.

{¶77} Appellant cites the testimony of K.M. regarding his relationship with his natural children. He testified the natural children did not want their children around P.M. The trial court found Appellant had not laid a foundation for the testimony. Again, we find the trial court did abuse its discretion in limiting the testimony, as the acts alluded to were excluded as other acts testimony.

{¶78} Appellant cites the trial court's finding with regard to the testimony of Luke Sargent. Again, where we have found no error, the same does not amount to cumulative error.

{¶79} Appellant's fifth assignment of error is overruled.

VI.

{¶80} In the sixth assignment of error, Appellant maintains the trial court erred in allowing the State to amend the indictment following the close of the State's case. We disagree.

**{¶81}** Ohio Criminal Rule 7(D) empowers trial courts to amend the indictment in respect to any defect, imperfection or omission in form of substance, or any variance with the evidence, provided no change is made in the name of the identity of the crime charged.

**{¶82}** Following the close of the State's evidence, the State moved the trial court, pursuant to Criminal Rule 7(D), to amend the indictment to conform to the evidence. P.M. testified as to incidents occurring in March and April of 2015, conceding he was confused about the dates.

**{¶83}** The trial court amended the indictment, finding amending the dates did not change the substance of the indictment.

**{¶84}** We find the trial court did not error in amending the dates of the indictment to cure the variance in testimony pursuant to Ohio Criminal Rule 7(D). The amendment did not alter the identity of the crime charged or the elements necessary to prove the crime beyond a reasonable doubt.

**{¶85}** The sixth assignment of error is overruled.

VII.

**{¶86}** In the seventh assignment of error, Appellant maintains the trial court erred in instructing the jury.

**{¶87}** On February 19, 2016, Appellant filed special requested jury instructions in addition to the standard instructions given to the jury by the court. The four specific instructions concerned the credibility and truthfulness of P.M.; the sufficiency of the law enforcement investigation; and Appellant's motive.

**{¶88}** The trial court generally instructed the jury on credibility.

**{¶89}** A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton,* 4th Dist. Scioto No. 09CA3330, 2011-Ohio-2783, 2011 WL 2397088, ¶ 69. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " *Hamilton* at ¶ 69, quoting *State v. Lessin,* 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Ellis,* 5th Dist. Fairfield No. 02 CA 96, 2004-Ohio-610, 2004 WL 251809, ¶ 19.

**{¶90}** The trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles. *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 690, 591 N.E.2d 762, 769–770. *Prejean v. Euclid Bd. Of Educ.*, 119 Ohio App.3d 793, 804, 696 N.E.2d. 606, 613 (1997).

**{¶91}** We find the trial court did not abuse its discretion in instructing the jury herein. The proposed instructions were not instructions of the law, but rather Appellant's interpretation/analysis of the significance of the evidence. The trial court cannot instruct the jury as to issues ultimately to be decided by the jury. Appellant merely sought to

restate her case in the instructions requested. Accordingly, we do not find the trial court abused its discretion in denying the requested specific instructions.

**{¶92}** The seventh assignment of error is overruled.

VIII.

**{¶93}** In the eighth assigned error, Appellant maintains the trial court erred in denying her motion for judgment of acquittal after verdict.

**{¶94}** Appellant filed a motion for acquittal following the jury's return of a guilty verdict on the first count of sexual battery.

**{¶95}** Criminal Rule 29 provides,

(C) Motion After Verdict or Discharge of Jury. If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned, the court may enter judgment of acquittal. It shall not be a prerequisite to the making of such motion that a similar motion has been made prior to the submission of the case to the jury.

**{¶96}** Appellant maintains her conviction is inconsistent with the not guilty verdicts in Counts Two and Three.

**{¶97}** An inconsistent verdict may be a result of leniency and compromise by the jurors, rather than being caused by jury confusion. *State v. Fraley,* Perry App.No. 03CA12, 2004–Ohio–4898, ¶ 15, citing *United States v. Powell* (1984), 469 U.S. 57, 105

S.Ct. 471, 83 L.Ed.2d 461. See, also, *State v. Ballard,* Cuyahoga App.No. 88279, 2007–Ohio–4017, ¶ 17.

**{¶98}**    In *State v. Adams* (1978), 53 Ohio St.2d 223, 374 N.E.2d 137, the Ohio Supreme Court held,

> The general rule as to inconsistency in a verdict as between different counts of an indictment is expressed in the annotation in 18 A.L.R.3d 259, at page 274, where it is stated that "* * * consistency between the verdicts on the several counts of an indictment * * * is unnecessary where defendant is convicted on one or some counts but acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal."

> The rule in Ohio, as expressed in *Griffin v. State* (1868), 18 Ohio St. 438; *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566; and *State v. McNicol* (1944), 143 Ohio St. 39, 53 N.E.2d 808, is stated in paragraph four of the syllabus in Browning, as follows:

> "The several counts of an indictment containing more than one count are not interdependent. A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."

> *State v. Adams* (1978) 53 Ohio St.2d 223; See also, *State v. Hicks* (1989), 43 Ohio St.3d 72.

**{¶99}** Based upon the above, we find the jury verdicts as to the different counts are not inconsistent. For a similar analysis and result, see *State v. Cutts*, Fifth Dist. Stark App. No.2008CA000079, 2009–Ohio-3563.

**{¶100}** The eighth assignment of error is overruled.

IX.

**{¶101}** In the ninth assignment of error, Appellant maintains the trial court erred in denying her motion for new trial after verdict.

**{¶102}** Ohio Criminal Rule 33(A)(5) provides,

**(A) Grounds.** A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

\*\*\*

(5) Error of law occurring at the trial;

**{¶103}** Appellant maintains the trial court erred in permitting the State to amend the indictment. For the reasons set forth in our analysis and disposition of Appellant's sixth assigned error, we disagree.

**{¶104}** Appellant further argues the trial court erred in refusing to admit the 404(B) evidence offered by Appellant. Again, based upon our analysis and disposition of Appellant's first assigned error, we overrule the argument.

{¶105} For the reasons set forth in our analysis and disposition of Appellant's first and sixth assignments of error, set forth above, we find the trial court did not error in denying Appellant's motion for a new trial after verdict.

{¶106} The ninth assignment of error is overruled.

X.

{¶107} In the final assignment of error, Appellant asserts the trial court erred in imposing a 42 month prison term which was not supported by the record.

{¶108} The two-step approach set forth in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. *State v. Howell,* 5th Dist. Stark No.2015CA00004, 2015–Ohio–4049, ¶ 31; *State v. Tammerine,* 6th Dist. Lucas No. L–13–1081, 2014–Ohio–425, ¶ 10. We now review felony sentences using the standard of review set forth in R.C. 2953.08. *Id.* at ¶ 11. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *Id. See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28.

{¶109} At the sentencing hearing herein, the trial court listened to the argument of Appellant's counsel, Appellant and Appellant's husband. The trial court stated on the record it considered the overriding principles and purposes of sentencing, protecting the public from future crimes and punishing Appellant. The court stated it considered the relevant seriousness and recidivism factors. The trial court was not required to state its

factual reasons of support for its findings. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855.

**{¶110}**  The sentence imposed is within the range provided for felonies of the third degree. The sentence imposed was not the maximum sentence afforded under the statute.  We find the trial court properly considered the statutory factors and complied with all applicable rules and laws.  We find the trial court's imposed sentence is not clearly and convincingly contrary to law, and the trial court did not error in sentencing Appellant.

**{¶111}**  The tenth assignment of error is overruled.

**{¶112}**  The judgment of the Perry County Court of Common Pleas is affirmed.

By: Hoffman, J.

Farmer, P.J.  and

Delaney, J. concur